UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

MARCUS K. MOON,

Defendant.

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission" or "SEC") alleges:

### I.  INTRODUCTION

1.      From at least May 2020 through February 2021 (the "relevant period"), Marcus K. Moon ("Defendant" or "Moon"), an insurance agent and former registered representative, through two alter ego entities, Increase Financial Strategies LLC and Faith Financial Strategies (collectively "Increase Financial"), improperly offered investment advisory and brokerage services to investors, predominantly targeting African-American investors of the Christian Faith. On Increase Financial's website, social media pages, and in networking groups in South Florida, Moon held himself out as a "financial services professional" who held "various registrations in the financial services" and portrayed Increase Financial as a firm providing brokerage services.

2.      These representations were false.  Increase Financial was never registered with the Commission nor the Financial Industry Regulatory Authority ("FINRA") in any capacity. Moreover, Moon – who was employed by an SEC-registered broker-dealer – only held a license

to sell mutual funds, variable annuities, variable life insurance, unit investment trusts, and municipal fund securities.  Moon did not have licenses to purchase or sell other securities, or provide investment advisory services.

3.      Yet during the relevant period, Moon offered his financial services to investors outside of his employer's knowledge and approval – a practice known as "selling away."  Moon, through Increase Financial, entered into Brokerage Account Service Agreements ("Agreements") with nine investors, under which he provided investors brokerage and advisory services for a fee. Moon instructed his clients to open brokerage accounts at various online brokerage firms, and to provide him with their account access credentials.  Moon then personally logged into his clients' accounts and purchased and sold stocks in their respective accounts.  Even when one brokerage firm closed clients' accounts after detecting suspicious activity, Moon encouraged his clients to open new accounts at another online trading platform.  Moon's trading resulted in approximately $31,800 in losses to clients, who collectively paid Moon $3,000 in fees for his services.

4.      By engaging in this conduct, Moon violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)], Sections 17(a)(2) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(2) and (3)], and Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(2)].

5.      Unless enjoined, Defendant is reasonably likely to continue to violate the federal securities laws.

## II. DEFENDANT AND RELATED ENTITY

### A. Defendant

6.      Moon, age 48, is a former resident of Miramar, Florida, who currently lives in Falls Church, Virginia.  Moon was the owner, principal, and sole employee of Increase Financial.  From

2

September 2016 until his termination in March 2021, Moon was associated with an SEC-registered broker-dealer and he held a Series 6 license.  In January 2022, FINRA barred Moon from association with any FINRA member in all capacities after he failed to respond to FINRA's requests for information.

### B.  Relevant Entity

7.      Increase Financial Strategies LLC, was formed as a Florida limited liability company in March 2020, with its principal place of business in Miramar, Florida.  In May 2020, the company was renamed INC Financial Strategies LLC, but Moon never conducted business or solicited investors under that name.  The company was legally dissolved in 2021.  Moon also operated his business under the name Faith Financial Strategies ("Faith Financial"), which was never formed as a legal entity.  Increase Financial has never been registered with the Commission in any capacity.

### III. JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)]; Sections 21(d), 2l(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]; and Sections 209(d), 209(e) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e) and 80b-14].

9.      This Court has personal jurisdiction over Moon, and venue is proper in this District because, among other things: (a) many of the acts and transactions constituting violations of the Securities Act, Exchange, Act, and Advisers Act occurred in this District, and (b) the principal place of business for Moon and Increase Financial was in this District.

10.     In connection with the conduct alleged in this Complaint, Moon, directly and indirectly, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV. DEFENDANT'S ACTS IN VIOLATION OF THE SECURITIES LAWS

### A.  Moon's Unregistered Brokerage and Investment Advisory Activities

11.     In 2017, Moon was employed by and became associated with an SEC-registered broker-dealer ("Broker Dealer Employer"), after he obtained his Series 6 license.  Moon's Series 6 license allowed him to sell mutual funds, variable annuities, variable life insurance, unit investment trusts, and municipal fund securities.

12.     In early 2020, while associated with Broker Dealer Employer, Moon incorporated Increase Financial, and created a company website, email address, and social media accounts, which he used to promote himself as a financial services professional offering broker-dealer and advisory services through Increase Financial for a fee.

13.     Moon promoted his financial brokerage and advisory services primarily through networking.  Specifically, Moon, a member of a professional group for African-American business executives in the Miami area and the Miami-Dade Chamber of Commerce, used these associations to network, host financial literacy seminars, and promote his financial services business.

14.     Additionally, Moon discussed investment strategies and opportunities with students and prospective investors during a five-week financial literacy seminar that he presented at a local Miami college in the fall of 2020, at networking events organized by the African-American business executives networking group, and at other events held around Miami.  When contacted by prospective investors after these events, Moon provided these individuals with promotional

materials, including Increase Financial's flyers, website and social media information, and a blank copy of Increase Financial's Agreement for brokerage and advisory services.

15.    The Increase Financial Agreement required investors to give Moon discretionary authority to trade in brokerage accounts the investor opened at an online brokerage firm of their choice:

> The client upon opening the account will supply Registered Representative Marcus Moon and Increase Financial Strategies LLC. With the username and password, which will only be used by Registered Representative Marcus Moon and Increase Financial Strategies LLC. to access the account for the purchase, sell and management of stocks, bonds, ETF's and mutual funds.

16.    The Agreement also contained a list of fees related to the supposed brokerage services offered by Increase Financial, including a $250 "Account Setup Fee" for "Brokerage Services" and "consultation fee(s)" ranging from $250 to $5,000 depending on the amount invested and account growth.  The Agreement also included a separate "performance fee(s)" that ranged from 15% to 30% of profits depending on the amount of assets under management.

17.    Investors who became clients paid Moon directly through his personal PayPal account, and Moon would then transfer those funds to his personal bank account.  In total, Moon received approximately $3,000 in account setup fees from clients.

18.    During the relevant period, Moon entered into Agreements with at least nine clients. Using the clients' account access credentials to log onto their online trading accounts, Moon purchased and sold stocks in their respective accounts.  When one online broker-dealer shut down some of the clients' accounts, after detecting that Moon was accessing those accounts and trading (instead of the account owners), Moon encouraged those clients to open new accounts at other online brokers.

19.     During the relevant period, Moon accessed at least eighteen different online brokerage accounts owned by nine Increase Financial clients, and conducted hundreds of trades that resulted in approximately $31,800 of losses.

**B.     Moon's Concealed his "Selling Away" Brokerage and Advisory Activity From His Employer**

20.     While he was associated with Broker Dealer Employer, Moon was required to disclose and obtain approval of any outside business activities.  However, not only did Moon fail to disclose to his Broker Dealer Employer the financial services he was offering and providing through Increase Financial, he misled Broker Dealer Employer and tried to conceal that activity.

21.     In April 2020, after Moon had already entered into Agreements with multiple clients, Moon submitted a DBA application to Broker Dealer Employer for Increase Financial. Broker Dealer Employer quickly denied Moon's DBA application.

22.     Undeterred, in June 2020, Moon submitted another DBA application for his company, newly renamed to "INC Financial Strategies." Broker Dealer Employer asked Moon to make revisions to the DBA application, and provide supporting documents.  Moon instead submitted an "Outside Business Activity" ("OBA") application for INC Financial Strategies.  In his application, Moon listed the OBA as "insurance brokering," not operating as a broker or investment advisor.

23.     Moon never received authorization from Broker Dealer Employer to operate Increase Financial as a DBA or OBA but, nevertheless, Moon continued to offer and provide broker-dealer services and investment advice to investors for a fee.

24.     Moreover, around the time Moon submitted his first DBA application for Increase Financial, Broker Dealer Employer learned of the Increase Financial webpage, and told Moon to take it down.  Ignoring his employer's request, Moon continued to operate the website offering

investment and brokerage services under a new name – Faith Financial.  Moon, now operating under the fictitious name of Faith Financial, continued to solicit investors to use his broker-dealer and advisory services.

25.     Moon communicated with prospective investors and clients through private email, he held live and online seminars without Broker Dealer Employer's knowledge or consent, and he directed clients to open accounts with online broker-dealers and asked investors to provide him with their passwords, so that he could trade in their individual accounts.

**C.     Moon's False and Misleading Statements to Investors**

26.     During the relevant period, Moon misled prospective investors and clients about his securities licenses and experience.  In promotional materials and on his website, Moon misleadingly held himself out as a "financial services professional" who "holds various registrations in the financial services space."  Moon portrayed Increase Financial (and later Faith Financial) as providing a number of financial services, including "brokerage account[s]" services.

27.     These representations were false.  Moon only held a Series 6 license, which allowed him to sell mutual funds, variable annuities, variable life insurance, unit investment trusts, and municipal fund securities.  Moon did not have licenses to purchase or sell other securities, or provide investment advisory services.

28.     The Agreements also identified Moon as "Registered Representative Marcus Moon," and that Moon and Increase Financial managed investors' accounts by trading in stocks, bonds, ETFs, and mutual funds. But Moon was not licensed or authorized to sell stocks, bonds or ETFs.

29.     Additionally, in emails to prospective investors and clients, Moon included a signature line at the bottom, which stated that he was a "Registered Representative offering securities through (Broker Dealer Employer), Member FINRA/SIPC."

30.     This signature line was misleading because, while Moon was employed by Broker Dealer Employer, he was not authorized by his employer, or licensed by FINRA, to purchase or sell common stock other than mutual funds. To the contrary, because Moon was purchasing and selling stocks in his investor clients' accounts without the knowledge or approval of Broker Dealer Employer, he was engaged in prohibited "selling away" activity.

31.     Moon also failed to disclose to investors that he did not have prior experience as a broker, that neither Moon nor Increase Financial were properly registered broker-dealers, and that he did not have his employer's approval to engage in broker-dealer activity.

### V.  CLAIMS FOR RELIEF

### COUNT 1

### Violations of Section 15(a)(1) of the Exchange Act

32.     The Commission adopts by reference paragraphs 1 through 31 as if fully set forth herein.

33.     From at least May 2020 through February 2021, Defendant, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while not registered with the Commission as a broker or dealer or not associated with an entity registered with the Commission as a broker or dealer in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

34.     By reason of the foregoing, Defendant violated, and unless enjoined is reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## COUNT 2

### Violations of Section 17(a)(2) of the Securities Act

35.     The Commission adopts by reference paragraphs 1 through 31 as if fully set forth herein.

36.     From at least May 2020 through February 2021, Defendant, in the offer and sale of securities by use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37.     By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C.§ 77q(a)(2)].

## COUNT 3

### Violations of Section 17(a)(3) of the Securities Act

38.     The Commission adopts by reference paragraphs 1 through 31 as it fully set forth herein.

39.     From at least May 2020 through February 2021, Defendant, in the offer and sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

40.     By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C.§ 77q(a)(3)].

## COUNT 4

### Violations of Section 206(2) of the Advisers Act

41.     The Commission adopts by reference paragraphs 1 through 31 as if fully set forth herein.

42.     From at least May 2020 through February 2021, Defendant, for compensation, engaged in the business of directly advising actual and potential investors as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.  Defendant was therefore an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

43.     By engaging in the conduct described above, Defendant, by use of the mail or any means or instrumentality of interstate commerce, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective clients.

44.     By reason of the foregoing, Defendant has violated and, unless enjoined, is reasonably likely to continue to violate, Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

### VI.  RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find Defendant committed the violations alleged in this Complaint and:

### A.  Permanent Injunctive Relief

Issue a permanent injunction restraining and enjoining Defendant, his agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with

him, and each of them, from violating Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)], Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C.§§ 77q(a)(2) and 77q(a)(3)], and Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

**B.  <u>Disgorgement and Prejudgment Interest</u>**

Issue an Order directing Defendant to disgorge all ill-gotten gains or proceeds received, with prejudgment interest thereon, resulting from the acts and/or courses of conduct alleged in this Complaint.

**C.  <u>Civil Money Penalties</u>**

Issue an Order directing Defendant to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

**D.  <u>Further Relief</u>**

Grant such other and further relief as may be necessary and appropriate.

**E.  <u>Retention of Jurisdiction</u>**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:  April 17, 2023                                    Respectfully submitted,


By:     **Teresa J. Verges**
        Teresa J. Verges (Florida Bar No. 0997651)
        Regional Trial Counsel
        Email:  vergest@sec.gov
        Tel.:  (305) 982-6376
        Fax:  (305) 536-4154

**Hughens Dolisca**
Hughens Dolisca (Florida Bar No. 99744)
Counsel
Email: doliscah@sec.gov
Tel.:  (305) 982-6344

Attorneys for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, FL  33131
Tel.:  (305) 982-6300